**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EDWARD PSZWARO, JAVIER DIAZ, AMANDA PETERSON, and CHRISTOPHER HOVEY, on behalf of themselves and the those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TOYOTA MOTOR SALES U.S.A. INC. and TOYOTA MOTOR NORTH AMERICA, INC.<br><br>Defendants. | Case No.:<br><br><u>Civil Action</u><br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiffs Edward Pszwaro, Javier Diaz, Amanda Peterson and Christopher Hovey ("Plaintiffs"), individually and on behalf of the Class defined below of similarly situated persons, alleges the following against Defendants Toyota Motor Sales U.S.A. Inc. ("TMS") and Toyota Motor North America, Inc. ("TMNA") (collectively referred to as "Defendants"), based upon personal knowledge with respect to herself and an information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## INTRODUCTION

1. Vehicle manufacturers have certain basic rules and procedures that must be followed. When a vehicle manufacturer sells a vehicle, it has a duty to ensure that the vehicle functions properly and safely for its advertised use and is free from defects. When a vehicle manufacturer discovers a defect, it must explicitly disclose the defect and make it right or cease selling the vehicle. When a vehicle manufacturer provides a warranty, it must stand by that warranty. This case arises from Defendants' breach of the duties and rules.

2. Defendants design, manufacture, market, distribute and sell vehicles.

3. This action arises from Defendants' failure to disclose to Plaintiff and other similarly situated individuals of a defect within the UA80 8-speed automatic transmissions and torque converters and related software. Defendants were aware of this manufacturing defect and, knowing that the vehicles at issue are unreliable and unsafe, failed to disclose it.

4. Plaintiffs brings this action on behalf of themselves and all others similarly situated who purchased or leased one or more: (1) Toyota and Lexus vehicle owners and lessees of model years ("MY") 2017-present Toyota Highlander, MY 2019-present Toyota RAV-4, MY 2023-present Toyota Grand Highlander, MY 2017-2024 Toyota Camry, MY 2017-2020 Toyota Sienna, MY 2019-2022 Toyota Avalon, MY 2019-present Lexus ES350, MY 2021-present Lexus ES250, MY 2023-present Lexus RX350, MY2022-present NX250, MY 2022-present NX350, and MY 2024-present Lexus TX350 (the "Class Vehicles" or "Vehicles").

5. This action is brought to remedy various violations of law in connection with Defendants' manufacturing, marketing, advertising, selling, warranting and servicing of the Class Vehicles.

6. The Class Vehicles have malfunctions with respect to their UA80 transmission. Specifically, the Class Vehicles suffer a defect that causes excess heat to build up inside the transmission, causing the transmission fluid to burn and the transmission to prematurely wear, ultimately leading to transmission failure. This can cause the Class Vehicle to stall.

7. The Class Vehicles also have a software defect which causes premature upshifts and torque-converter clutch engagements, causing the transmission and torque-assembly to deteriorate faster than expected.[1]

[1] The defects alleged at Paragraphs 6 and 7 are collectively referred to herein as "the Defect."

8. Upon information and belief, Defendants have long been aware of the Defect. Despite its longstanding knowledge of this Defect, Defendants have failed to disclose the defect to consumers and, when presented with the Defect, refuse repair.

9. For customers whose Vehicles are within the Powertrain Limited Warranty period (which extends for the shorter of sixty months (five years) or 60,000 miles), Toyota has done nothing to address or correct the Defect when it manifests in the Class Vehicles.

10. As a result of Toyota's unfair, deceptive and/or fraudulent business practices, owners and/or lessees of Class Vehicles, including Plaintiff, have suffered an ascertainable loss of money and/or property and/or loss in value. The unfair and deceptive trade practices committed by Toyota were conducted in a manner giving rise to substantial aggravating circumstances.

11. Had Plaintiff and other Class members known about the Defect at the time of purchase or lease, they would not have purchased or leased the Class Vehicles, or would have paid substantially less for the Class Vehicles.

12. As a result of Defendant's misconduct, misrepresentations, and omissions, Plaintiff and putative Class Members have suffered injury in fact, including economic damages.

13. Plaintiff and the Class bring this suit for economic damages they sustained as a result. Given the massive quantifies of vehicles sold nationwide, this class action is the proper vehicle for addressing Defendant's misconduct and attaining needed relief for those affected.

## PARTIES

14. Plaintiff Edward Pszwaro is a citizen of the State of New Jersey and resides in Mount Laurel, New Jersey.

15. Plaintiff Javier Diaz is a citizen of the State of New York and resides in Yonkers, New York.

16. Plaintiff Amanda Peterson is a citizen of the State of Indiana and resides in Indianapolis, Indiana.

17. Plaintiff Christopher Hovey is a citizen of the State of Indiana and resides in Muncie, Indiana.

18. Defendant Toyota Motor North America, Inc. ("TMNA") is a California corporation with its principal place of business in Plano, Texas. TMNA serves as Toyota's North American headquarters and manages automobile design, research and development, engineering, regulatory compliance, and quality-assurance. TMNA exercises control over Toyota's product design, testing and warranty practices, including those related to the Defect.

19. Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS") is a California corporation with its principal place of business in Plano, Texas. TMS is responsible for the marketing, distribution, and sale of Toyota and Lexus vehicles in the United States. TMS is also responsible for the administration of consumer warranties, service bulletins, managing dealerships, and communicating with consumers and service centers in the United States.

20. Defendants design, manufacture, market, distribute, service, repair, sell, and lease vehicles, including the Class Vehicles, nationwide. Defendants are the warrantor and distributors of the Class Vehicles in the United States.

21. Defendants through various entities, markets, distributes, warrants, and sells Toyota and Lexus automobiles and parts for those automobiles, including the Class Vehicles, in multiple locations across the United States.

## JURISDICTION AND VENUE

22. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act of 2005 ("CAFA"), because (i) there are 100 or more class

members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one member of the class and defendant are citizens of different States.

23. Defendants sell vehicles internationally, throughout the United States and within this judicial district. This Court has personal jurisdiction over the Defendants because the Defendants purposefully availed itself of the laws, rights, and benefits of the State of New Jersey. *See Mallory v. Norfolk Southern Railway Co*., 143 S. Ct. 2028, 600 U.S. 122, 216 L.Ed. 815 (2023).

24. Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Defendants sell and distribute their vehicles throughout the United States and within this District. Plaintiff and the some of the Class purchased their Class Vehicles in this District.

## FACTUAL ALLEGATIONS

### Plaintiff Edward Pszwaro

25. Based on Defendants' active and persistent promotions touting the quality of its vehicles and his admiration of Toyota/Lexus vehicles, Plaintiff Peterson considered Toyota quality company with a reputation for producing reliable vehicles.

26. In addition to Toyota's reputation through its marketing and promotion, Plaintiff decided on the 2024 Toyota Camry SE because he believed it was a high-quality vehicle.

27. Plaintiff Edward Pszwaro purchased his new 2024 Toyota Camry SE at a Toyota dealership located in Mt. Laurel, New Jersey.

28. Plaintiff Pszwaro's vehicle is a Class Vehicle, and has the UA80 Transmission that is the subject of this lawsuit.

29. Plaintiff Pszwaro purchased his Class Vehicle for personal, family, or household use.

30. Defendants did not disclose that the Class Vehicle was not safe, that it suffered from the Defect, or that it would not operate as intended.

31. After the purchase of his vehicle, Plaintiff noticed that the vehicle makes a loud, whining noise when shifting. He brought the car to Toyota for service and was advised that the vehicle was working properly, and that this was "normal" and just "due to cold weather."

32. At all times, Plaintiff Pszwaro maintained his Class Vehicle in accordance with the owners' manual and maintenance schedule. Plaintiff Diaz has driven his Class Vehicle in a foreseeable manner and has not use the Vehicle for purposes unintended by Defendants. Despite this normal and foreseeable use, the Defect has rendered Plaintiff Diaz's Class Vehicle unfit for its intended use and ordinary purpose.

**Plaintiff Javier Diaz**

33. Based on Defendants' active and persistent promotions touting the quality of its vehicles and his admiration of Toyota/Lexus vehicles, Plaintiff Diaz considered Toyota quality company with a reputation for producing reliable vehicles.

34. In addition to Toyota's reputation through its marketing and promotion, Plaintiff decided on the 2024 Lexus TX because he believed it was a high-quality vehicle.

35. In August 2024, Plaintiff Diaz purchased his used 2024 Lexus at a dealership located in Queens, New York. At the time of his purchase, the subject vehicle had 300 miles on it. The vehicle is still under a factory warranty.

36. Plaintiff Diaz vehicle is a Class Vehicle, and has the UA80 Transmission that is the subject of this lawsuit.

37. Plaintiff Diaz purchased his Class Vehicle for personal, family, or household use.

38. After his purchase, Plaintiff Diaz recognized that the car "jerks" and does not shift smoothly from gear to gear.

39. At all times, Plaintiff Diaz maintained his Class Vehicle in accordance with the owners' manual and maintenance schedule. Plaintiff Diaz has driven his Class Vehicle in a foreseeable manner and has not use the Vehicle for purposes unintended by Defendants. Despite this normal and foreseeable use, the Defect has rendered Plaintiff Diaz's Class Vehicle unfit for its intended use and ordinary purpose.

**Plaintiff Amanda Peterson**

40. Based on Defendants' active and persistent promotions touting the quality of its vehicles and his admiration of Toyota/Lexus vehicles, Plaintiff Peterson considered Toyota quality company with a reputation for producing reliable vehicles.

41. In addition to Toyota's reputation through its marketing and promotion, Plaintiff decided on the 2018 Toyota Camry XLE because she believed it was a high-quality vehicle.

42. Plaintiff Amanda Peterson purchased her new 2018 Toyota Camry XLE at a Toyota dealership located in Indiana.

43. Plaintiff Peterson's vehicle is a Class Vehicle, and has the UA80 Transmission that is the subject of this lawsuit.

44. Plaintiff Peterson purchased her Class Vehicle for personal, family, or household use.

45. Defendants did not disclose that the Class Vehicle was not safe, that it suffered from the Defect, or that it would not operate as intended.

46. In or around late 2025, Plaintiff Peterson noticed that the transmission was slipping. As a result, she made a diagnostic appointment at her Toyota dealership.

47. Defendants, by and through their dealership, advised Plaintiff that her vehicle was fine and that there were no problems with the transmission.

48. Shortly thereafter, Plaintiff's vehicle broke down while in operation.

49. The reason that Plaintiff's vehicle broke down was due to a defect with the transmission assembly.

50. At all times, Plaintiff Peterson maintained his Class Vehicle in accordance with the owners' manual and maintenance schedule. Plaintiff Diaz has driven his Class Vehicle in a foreseeable manner and has not use the Vehicle for purposes unintended by Defendants. Despite this normal and foreseeable use, the Defect has rendered Plaintiff Diaz's Class Vehicle unfit for its intended use and ordinary purpose.

**Plaintiff Christopher Hovey**

51. Based on Defendants' active and persistent promotions touting the quality of its vehicles and his admiration of Toyota/Lexus vehicles, Plaintiff Hovey considered Toyota quality company with a reputation for producing reliable vehicles.

52. In addition to Toyota's reputation through its marketing and promotion, Plaintiff decided on the 2023 Lexus ES 350 because he believed it was a high-quality vehicle.

53. In September 2024, Plaintiff Hovey purchased his Certified Pre-Owned 2023 Lexus at a Toyota/Lexus dealership located in Indianapolis, Indiana.

54. Plaintiff Hovey's vehicle is a Class Vehicle, and has the UA80 Transmission that is the subject of this lawsuit.

55. Plaintiff Hovey purchased his Class Vehicle for personal, family, or household use.

56. Defendants did not disclose that the Class Vehicle was not safe, that it suffered from the Defect, or that it would not operate as intended.

57. In late 2024/early 2025, Plaintiff Hovey noticed that the vehicle would start "bucking" when accelerating, the RPM needle would bounce, and the vehicle would shake.

58. On February 6, 2025, when the vehicle had 14,830 miles on it, Plaintiff Hovey took the vehicle to the dealership regarding this problem. At that time, he was advised by the service advisor that nothing was wrong with he vehicle.

59. Because the problem was not acknowledged by Toyota, it persisted. On August 6, 2025, Plaintiff Hovey again took his vehicle to the dealership regarding this problem. At this time, the vehicle had approximately 25, 757 miles on it. The dealership held Plaintiff Hovey's vehicle for a week. During this time, the Master Diagnostic Technician inspected it, and also addressed the issue with Lexus's corporate office. Plaintiff Hovey was advised that there was no issue with the vehicle, and that it was "performing to specifications."

60. The vehicle continues to experience "bucking" and shaking when accelerating.

61. At all times, Plaintiff Diaz maintained his Class Vehicle in accordance with the owners' manual and maintenance schedule. Plaintiff Diaz has driven his Class Vehicle in a foreseeable manner and has not use the Vehicle for purposes unintended by Defendants. Despite this normal and foreseeable use, the Defect has rendered Plaintiff Diaz's Class Vehicle unfit for its intended use and ordinary purpose.

**The UA80 Transmission Defect**

62. The defective transmission herein has been in manufacture since 2016 and first began appearing in vehicles in 2017.

63. Toyota developed the UA80 transmission to increase efficiency and control. Its design involved configuring the torque converter and gear train on the first axis, the counter gear on the second axis, and the differential gear on the third axis. The oil pump is chain driven and located on a separate axis.

64. As compared to previously a developed six speed transmission used by Toyota, the UA80 was designed to be mounted similarly to the prior 6-speed without substantial modification of the subject vehicles. However, this design required a number of significant modifications over the design of the prior 6-speed transmission.

65. These modifications resulted in mechanical issues that give rise to the Defect.

66. Furthermore, the software is defective because it prioritizes early upshifts and torque-converter clutch engagement to maximize fuel economy – with the caveat that this frequent cycling causes excessive stress on the transmission by overheating and degrading the transmission components and transmission fluid.

67. Both defects are inherently dangerous as a faulty transmission can cause a vehicle to act in unintended ways, as a defective transmission may not be able to engage or stay in gear, cause slipped gears, cause fluid leaks, cause delayed shifts, cause missed gear shifts, cause delayed engagement and harsh shifting, cause burning smells and unusual noises, as well as cause the vehicle to lose power.

68. These defects can have disastrous effects, as a defective transmission can cause a vehicle to stop mid-operation.

69. The Defect exists in the Class Vehicles and makes them unreliable and unsafe.

70. The UA80 transmissions have been known to be an issue for several years, with several customer support program bulletins issued by Defendants. Despite knowing that the UA80

transmissions are defective, and possessing the knowledge that the Class Vehicles are unreliable and unsafe, Defendants continue to market and advertise that their vehicles are safe.

71. Defendants have known since at least August 2016 that their UA80 transmissions are defective. Despite knowing that this defect existed, Defendants have continued to market and sell their vehicles with defective transmissions.

72. This issue has existed for several years, and has been raised in multiple technical support bulletins, including but not limited to: Tech Tip T-TT-0410 (Aug. 17, 2016) ; T-SB-0187-17 (Feb. 20, 2017); T-SB-0194-17 (Mar. 2, 2017); T-SB-0330-17 (Dec. 11, 2017); T-SB-0001-18 Jan. 8, 2018, later revised February 2, 2018); T-SB-0160-18 (Dec. 17, 2018, later revised May 11, 2021); Customer Support Program ZJC (Apr. 18, 2019); T-TT-0580-19 (Jan. 27, 2020); T-SB-0122-20 (Dec. 14, 2020, later revised May 26, 2021, and Jan. 22, 2021); T-SB-0008-21 (Feb. 9, 2021); L-SB-0003-21 (Feb. 9, 2021); T-SB-0087-23 (Nov. 3, 2023).

**Applicable Warranties**

73. Toyota sold the Class Vehicles with written express warranties.

74. Toyota provides these warranties to buyers, including Plaintiffs and members of the Class, after the purchase of the Class Vehicles is completed; buyers like Plaintiffs and the members of the Class have no pre-sale knowledge or ability to bargain as to the terms of the warranties.

**Fraudulent Omission/Concealment Allegations**

75. Absent discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Toyota responsible for making false and misleading statements regarding the Class Vehicles. Defendants are in possession of all of this information. Plaintiffs' claims arise out of Defendants' fraudulent

omission/concealment of the Defect, despite their representations about the quality, safety, and comfort of the Class Vehicles.

76. Plaintiffs allege that at all relevant times, including specifically the time he and Class Members purchased their Class Vehicle, Defendants knew, or were reckless in not knowing, of the Defect; Defendants had a duty to disclose the Defect based upon their exclusive knowledge; and Defendants never disclosed the Defect to Plaintiffs or the public at any time or place in any manner.

77. Plaintiffs makes the following specific concealment/omission-based allegations with as much specificity as possible absent access to the information necessarily available only to Defendant:

a. **Who**: Defendants actively concealed and omitted the Defect from Plaintiffs and the Class Members while simultaneously touting the safety and dependability of the Class Vehicles, as alleged herein. Plaintiffs are unaware of, and therefore unable to identify, the true names and identities of those specific individuals as Defendants are responsible for such decisions.

b. **What**: Defendants knew, or were reckless or negligent in not knowing, that the Class Vehicles contain the Defect, as alleged herein. Defendants concealed and omitted the Defect while making representations about the safety, dependability, and other attributes of the Class Vehicles, as alleged herein.

c. **When**: Defendants concealed and omitted material information regarding the Defect at all times while making representations about the safety and dependability of the Class Vehicles on an ongoing basis, and continuing to this day, as alleged herein. Defendants still have not disclosed the truth about the

full scope of the Defect. Defendants have never taken any action to inform consumers about the true nature of the Defect in Clas Vehicles.

d. **Where**: Defendants concealed and omitted material information regarding the true nature of the Defect in every communication they had with Plaintiffs and Class Members and made representations about the quality, safety, and comfort of the Class Vehicles. Plaintiffs are aware of no document, communication, or other place or thing, in which Defendants disclosed the truth about the efull scope of the Defect in Class vehicles to anyone outside of their respective entities. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manuals, or on Defendants' websites. There are channels through which Defendants could have disclosed the Defect, including but not limited to, (1) point of sale communications; (2) the owner's manual; and/or (3) direct communication to Class Members through means such as state vehicle registry lists.

e. **How**: Defendants concealed and omitted the Defect from Plaintiffs and Class Members and made representations about the quality, safety, dependability, and comfort of the Class Vehicles. Defendants actively concealed and omitted the truth about the existence, scope and nature of the Defect from Plaintiffs and Class Members at all times, even though they knew about the Defect and knew that information about the Defect would be important to a reasonable consumer, Toyota promised in its marketing materials that Class Vehicles have qualities that they do not have.

## ESTOPPEL FROM PLEADING AND TOLLING OF STATUTES OF LIMITATIONS

78. Plaintiffs and the members of the Class had no way of knowing about Defendants' conduct concerning the safety risks associated with the vehicles.

79. Neither Plaintiffs nor any other members of the Class, through the exercise of reasonable care, could have discovered the conduct by Defendant alleged here. Further, Plaintiffs and members of the Class did not discovery and did not know facts that would have caused a reasonable person to suspect that Defendant was engaged in the conduct alleged herein. For these reasons, all applicable statutes of limitations have been tolled by the discovery rule concerning claims asserted by Plaintiffs and the Class.

80. Further, by failing to provide notice of the risks of malfunction or injury associated with the continued normal use of the Vehicles, Defendant concealed its conduct, and the existence of the claims asserted herein from Plaintiff and the Class Members.

81. Upon information and belief, Defendant intended its acts to conceal the facts and claims from plaintiff and Class Members. Plaintiffs and Class Members were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendant's conduct. For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiff sand of Class members should be tolled.

## CLASS ACTION ALLEGATIONS

82. Plaintiffs bring this action on behalf of themselves and the following Class of similarly situated individuals pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure. Specifically, the Class Members are defined as:

> **Nationwide Class**: All persons in the United States who are current or former owners or lessees of a "Class Vehicle."

83. In the alternative to the Nationwide Class pursuant to Fed. R. Civ. P. 23(c)(5), Plaintiffs seek to represent the following Subclasses:

> **Multi-State Subclass** All persons in California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, or Washington[2] who are current or former owners or lessees of a "Class Vehicle."
>
> **New Jersey Subclass:** All persons in New Jersey who are current or former owners or lessees of a Class Vehicle (the "New Jersey Class").
>
> **New York Subclass**: All persons in New Jersey who are current or former owners or lessees of a Class Vehicle (the "New Jersey Class").
>
> **Indiana Subclass**: All persons in Indiana who are current or former owners or lessees of a Class Vehicle (the "New Jersey Class").

84. Excluded from the Class are (a) any officers, directors or employees, or immediate family members of the officers, directors, or employees of the Defendants or any entity in which the Defendants have a controlling interest, (b) any legal counsel or employee of legal counsel for the Defendants, and (c) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members.

85. Plaintiffs reserve the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

86. The members of Class are capable of being described without difficult managerial or administrative problems. The members of the putative Class are also readily identifiable from

[2] While discovery may alter the following, the states in the Multi-State Subclass are limited to those states with similar consumer fraud laws under the facts of this case: California (Cal. Bus. & Prof. Code §17200, *et seq*); Florida (Fla. Stat. §501.201, *et seq*.); Illinois (815 Ill. Comp. Stat. §505/1, *et seq*.); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq*.); Michigan (Mich. Comp. Laws §445.901, *et seq*.); Minnesota (Minn. Stat. §325F.67, *et seq*.); Missouri (Mo. Rev. Stat. §407.010, *et seq*.); New Jersey (N.J, Stat. §56:8-1, *et seq*.); New York (N.Y. Gen. Bus. Law §§349 and 350); and Washington (Wash. Rev. Code §19.86.010, *et seq*.). Plaintiff has standing to represent the proposed Multi-State Sub-class. Any challenge brought by Defendant regarding Plaintiff's standing to represent any proposed class should be deferred to the class certification stage.

the information and records in the possession or control of Defendants or its affiliates and agents and from public records.

87. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

88. The Proposed Class is so numerous that the joinder of all members is impracticable.

89. This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

90. **Numerosity.** Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information is in the sole possession of Defendants and obtainable by Plaintiffs only through the discovery process. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

91. **Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist for all Class Members and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

i. Whether Class Vehicles contain the alleged Defect;

ii. Whether the Defect would be considered material by a reasonable consumer;

iii. Whether the Defect would constitute an unreasonable safety risk;

iv. Whether Defendants had a duty to disclose the Defect to Plaintiff and other Class Members;

v. Whether Defendants knew or reasonably should have known of the Defect before Defendants sold Class Vehicles to Plaintiff and Class Members;

vi. Whether the Defect has diminished the value of the Class Vehicles;

vii. Whether Defendants should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of repairing, replacing, or otherwise remedying the Defect;

viii. Whether Defendants are obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective batteries;

ix. Whether Defendants breached the implied warranty of merchantability pursuant to state law and/or the UCC;

x. Whether Defendants are liable for fraudulent omission;

xi. Whether Defendants were unjustly enriched;

xii. Whether Plaintiffs and the other Class Members are entitled to damages and other monetary relief.

92. **Typicality.** Plaintiffs' claims are typical of those of the absent Class Members in that Plaintiff as well as the Class Members each purchased and used the Class Vehicle that contained the same Defect found in all other Class Vehicles.

93. **Adequacy.** Plaintiffs will fairly and adequately represent and protect the interests of the members of the putative Class. Plaintiffs have retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiffs and her counsel are committed to the vigorous prosecution of this action. Plaintiffs have no conflicts of interest or interests adverse to those of putative Class.

94. **Predominance and Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of the claims of Plaintiffs and Class Members, and questions of law and fact common to all Class Members predominate over questions affecting only individual class members. Class Members can be readily identified and notified based on, inter alia, Defendant's business records or other sources.

## CLAIMS FOR RELIEF

### COUNT I
### BREACH OF EXPRESS WARRANTY
**(On Behalf of Plaintiffs, the Nationwide Class, and alternatively the Subclasses)**

95. Plaintiffs re-allege and incorporates all preceding factual allegations as set forth fully herein.

96. Defendants expressly warranted that the Class Vehicles and transmissions were of high quality and, at a minimum, would actually work safely and as intended. Defendants also expressly warranted that it would repair and/or replace defects in material and/or workmanship free of charge that occurred during the New Vehicle Limited Warranty, Powertrain Limited Warranty and certified pre-owned ("CPO") warranty periods.

97. Defendants breached these warranties by selling to Plaintiffs and Class members the Class vehicles with known defects, the

98. Defect, which are not of high quality, and which fail prematurely and/or fail to function properly.

99. As a result of Defendants' actions, Plaintiffs and Class members have suffered economic damages including but not limited to repairs, loss of vehicle use, substantial loss in value and resale value of the vehicles, and other related damage.

100. Defendants' attempt to disclaim or limit these express warranties is

unconscionable and unenforceable. Here, Defendants knowingly sold a defective product without informing customers about the manufacturing and/or material design defect. Furthermore, Defendants continue to charge Class members for repairing the defective Class Vehicles despite knowledge that the transmissions are defective.

101. The time limits in Defendants' warranty periods are also unconscionable and inadequate. Plaintiff and Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Class members, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

102. Plaintiff and Class members have complied with all obligations under the warranties, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

**COUNT II**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(On Behalf of Plaintiffs, the Nationwide Class, and alternatively the Subclasses)**

103. Plaintiffs re-allege and incorporates all preceding factual allegations as set forth fully herein.

104. Plaintiffs brings this cause of action on behalf of themselves and the Class.

105. Defendants are merchants and were at all relevant times involved in the distributing, warranting, and/or selling of the Class Vehicles.

106. The Class Vehicles are "goods" under the relevant laws, and Defendants knew or had reason to know of the specific use for which the Class Vehicles, as goods, were purchased.

107. Defendants entered into agreements with consumers to sell the Class Vehicles to

be used by Plaintiffs and Class Members for personal use.

108. The implied warranty of merchantability included with the sale of each Class Vehicle means that Defendants guaranteed that the Class Vehicles would be fit for the ordinary purposes for which cars are used and sold and were not otherwise injurious to consumers. The implied warranty of merchantability is a critical part of the basis for the benefit of the bargain between Defendants, Plaintiffs, and the Class Members.

109. Defendants breached the implied warranty of merchantability because the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation. After all, Defendants did not indicate that the Class Vehicles would contain the Defect.

110. Given that Plaintiffs and Class Members are unable to safely drive the Class Vehicles without risk of crashing, the Class Vehicles are not fit for their particular purpose of legal and safe transportation and usage.

111. Defendants' warranties expressly apply to the purchaser of the Class Vehicles, creating privity between Defendants and Plaintiffs and Class Members.

112. Privity is not required because Plaintiffs and Class Members are the intended beneficiaries of Defendants' warranties and sales. Defendants' warranties were designed for and intended to benefit the consumer only, including Plaintiffs and Class Members.

113. Defendants had been provided sufficient notice of its breaches of implied warranties associated with the Class Vehicles. Defendants were put on actual notice of its breach through their review of consumer complaints and their own investigation.

114. Had Plaintiffs, Class Members, and the consuming public known that the Class Vehicles would not be provided with properly functioning batteries they would not have purchased

the Class Vehicles or would have paid less for them.

115. As a direct and proximate result of the foregoing, Plaintiffs and the Class suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest, and fees, including attorneys' fees, as allowed by law.

116. Plaintiffs suffered injury in that they purchased Vehicles that are worthless. For all intents and purposes, Plaintiffs' vehicle is now an unsafe vehicle with a notoriously defective Transmission.

117. Plaintiffs also suffered economic loss in reference to the value of their Vehicles. As a result of the Defect, Plaintiff's Vehicle's resale value is now diminished. When Plaintiffs intends to sell their Vehicles, the reputation of being a faulty vehicle will harm the resale value and place Plaintiffs in a much worse bargaining position compared to if Defendants had properly manufactured, designed, produced, distributed, and advertised Class Vehicles with properly functioning transmissions.

118. Plaintiffs have suffered damages in that Plaintiffs have been inconvenienced by the accompanying required repairs. As discussed above, Plaintiffs will spend hours upon hours tending to these repairs. The Defect prevented the Class Vehicles from being roadworthy and reliable. But for this defect, Plaintiff would not have had to spend hours upon hours of their lies tending to this Recall.

**COUNT III**
**FRAUD BY OMISSION/CONCEALMENT**
**(On Behalf of Plaintiffs, the Nationwide Class and alternatively the Subclasses)**

119. Plaintiffs repeat and re-allege all proceeding factual allegations above as if fully set forth herein.

120. Plaintiffs brings this count on behalf of themselves and the Class.

121. Defendants were aware of the Defect within the Class Vehicles when the Class Vehicles were marketed and sold to Plaintiffs and the other members of the Class.

122. Having been aware of the Defect within the Class Vehicles and having known that Plaintiffs and the other members of the Class could not have reasonably been expected to know of the Defect, Defendants had a duty to disclose the defect to Plaintiffs and the other members of the Class in connection with the sale of the Class Vehicles.

123. Defendants did not disclose the Defect to Plaintiffs and the other members of the Class in connection with the sale of the Class Vehicles.

124. For the reasons set forth above, the Defect within the Class Vehicles comprises material information with respect to the sale of the Class Vehicles.

125. In purchasing the Class Vehicles with the Defect, Plaintiffs and the other members of the Class reasonably relied on Defendants to disclose known material defects with respect to the Class Vehicles.

126. Had Plaintiffs and the other members of the Class known of the Defect within the Class Vehicles, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

127. Through their omissions regarding the Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased or pay more for a Class Vehicle than they otherwise would have paid.

128. As a direct and proximate result of Defendants' omissions, Plaintiffs and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Defect had been disclosed to them, and, therefore, have incurred damages in

an amount to be determined at trial.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiffs, the Nationwide Class and alternatively the Subclasses)**

129. Plaintiffs repeat and re-alleges all proceeding factual allegations above as if fully set forth herein.

130. Plaintiffs brings this count on behalf of themselves and the Class.

131. Plaintiffs, and the other members of the Class, conferred benefits on Defendants in the form of monies paid to purchase Defendant's worthless Class Vehicles equipped with defective transmissions.

132. Defendants voluntarily accepted and retained this benefit, and had knowledge and appreciation of this benefit, which was conferred upon them by and at the expense of Plaintiffs and the Class Members.

133. Because this benefit was obtained unlawfully, namely by selling and accepting compensation for the Class Vehicles without providing properly functioning transmissions in the Class Vehicles, it would be unjust and inequitable for Defendants to retain the benefit without paying the value thereof.

134. The circumstances, as described herein, are such that it would be inequitable for Defendants to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the Class Members.

135. Defendants manufactured, marketed, and sold the Class Vehicles under the guise of these Vehicles being safe and operable, without failure of transmission systems. Instead, Defendants sold Vehicles that were/are deadly crash risks, given the defective transmission issues.

136. Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and members of the Class is unjust and inequitable, Defendants must pay restitution

to Plaintiffs and members of the Class for its unjust enrichment, as ordered by the Court.

**COUNT V**
**Violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq*.**
**(On Behalf of Plaintiff Pszwaro and the Multi-State Subclass and, alternatively, the New Jersey Subclass)**

137. Plaintiff Pszwaro repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

138. Plaintiff brings this claim individually on behalf of the Multi-State Subclass and, alternatively, the New Jersey Subclass.

139. The Consumer Fraud Acts of the States in the Multi-State subclass prohibit unfair or deceptive business practice sin trade or commerce. The specific laws at issue are:

a. California (Cal. Bus. & Prof. Code § 17200, *et seq*.);

b. Florida (Fla. Stat. § 501.201, *et seq*.);

c. Illinois (815 Ill. Comp. Stat. § 505/1, *et seq*.);

d. Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq*.);

e. Michigan (Mich. Comp. Laws § 445.901, *et seq*.);

f. Minnesota (Minn. Stat. § 325F.67, *et seq*.);

g. Missouri (Mo. Rev. Stat. § 407.010, *et seq*.);

h. New Jersey (N.J. Stat. § 56:8-1, *et seq*.);

i. New York (N.Y. Gen. Bus. Law §§ 349 and 350); and

j. Washington (Wash. Rev. Code § 19.86.010, *et seq*.)

175. Plaintiff and the other Members of the Multi-State Subclass have standing to pursue a cause of action for violations of the Consumer Fraud Acts of the states in the Multi-State Subclass because Plaintiff and Members of the Multi-State Subclass have suffered an injury in fact and lost money as a result of Defendants' actions set forth herein.

140. Plaintiff is a "person" and a "consumer" pursuant to N.J.S.A. § 56:8-1(d), as he is and all Class Members are natural persons as defined therein.

141. Defendants' Class Vehicles are "merchandise" pursuant to N.J.S.A. § 56:8-1(c), as it is a good offered directly or indirectly to the public for sale as defined therein.

142. Defendants engage in the sale of merchandise pursuant to N.J.S.A. § 56:8-1(e), as it offers the Class Vehicles directly or indirectly to the public for sale.

143. N.J.S.A. 56:8-2 expressly declares that:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; …

144. Defendants engaged in an unconscionable, unfair, deceptive, fraudulent, and/or misleading pattern and practice by making misleading or false statements regarding the Class Vehicles regarding their use and safety.

145. Moreover, before engaging in the sale of the Class Vehicles to Plaintiff Pszwaro and reasonable consumers, Defendants knew or should have known that the Class Vehicles had a serious defect, and were otherwise not able to safely or reliably function as intended and created a serious risk to injury of the user, but Defendants omitted and concealed this material fact to consumers, including Plaintiff Pszwaro and Class members, by continuing to sell the Class Vehicles without any notice or disclosure of the material defect.

146. Defendants chose to market the Class Vehicles in this way to impact consumer choices and gain market share. They are aware that all consumers who purchased the Class

Vehicles were exposed to and would be affected by its misrepresentations and omissions and would reasonably believe that the Class Vehicles safely and reliably functioned and were safe for use by the user, and that Defendant's marketing materials, including representations and omissions, were otherwise accurate. However, Defendants' representations are false and misleading because the Class Vehicles contain a material defect and are not safe for use by its user, and do not safely or reliably function.

147. Plaintiff Pszwaro and Class Members have been damaged as a proximate result of Defendants' violations of the NJCFA. They have suffered damages as a direct and proximate result of purchasing the Class Vehicles.

148. As a direct and proximate result of Defendant's violations of the NCFA, as set forth above, Plaintiff Pszwaro and the New Jersey Class members have suffered ascertainable losses of money caused by Defendants' representations and material omissions regarding the ability of the Class Vehicles to safely and reliably function, and/or have had to pay monies for repair.

**COUNT VI**
**Violation of the New York General Business Law §349, *ET SEQ.***
**(On behalf of Plaintiff Diaz and the Mutli-State Subclass and, alternatively, the New York Subclass)**

149. Plaintiff Diaz incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

150. Plaintiff Diaz, on behalf of himself and the Multi-State Subclass, and alternatively the New York Subclass, and all others similarly situated incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

151. The Consumer Fraud Acts of the States in the Multi-State subclass prohibit unfair or deceptive business practice sin trade or commerce. The specific laws at issue are:

a. California (Cal. Bus. & Prof. Code § 17200, *et seq.*);

b. Florida (Fla. Stat. § 501.201, *et seq.*);

c. Illinois (815 Ill. Comp. Stat. § 505/1, *et seq.*);

d. Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*);

e. Michigan (Mich. Comp. Laws § 445.901, *et seq.*);

f. Minnesota (Minn. Stat. § 325F.67, *et seq.*);

g. Missouri (Mo. Rev. Stat. § 407.010, *et seq.*);

h. New Jersey (N.J. Stat. § 56:8-1, *et seq.*);

i. New York (N.Y. Gen. Bus. Law §§ 349 and 350); and

j. Washington (Wash. Rev. Code § 19.86.010, *et seq.*)

176. Plaintiff and the other Members of the Multi-State Subclass have standing to pursue a cause of action for violations of the Consumer Fraud Acts of the states in the Multi-State Subclass because Plaintiff and Members of the Multi-State Subclass have suffered an injury in fact and lost money as a result of Defendants' actions set forth herein.

152.

153. NYGBL §349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce in the furnishing of any service in [New York]."

154. Defendants violated GBL §349 when it failed to disclose material information concerning Defect which it knew about at the time of sale, allowing unsuspecting purchasers to buy the Class Vehicles which were falsely represented. It further engaged in deceptive acts through false or misleading representations through advertising and other express and implied statements regarding the safety and utility of Class vehicles.

155. Defendants knowingly engaged in deceptive trade practices in the course of its business by knowingly making false representations in its sale transactions by representing that the Class Vehicles were reliable, safe, and would perform as intended.

156. Defendant chose to market its plans in this way to impact consumer choices and gain market share in the competitive automotive sales market. Defendant is aware that all consumers who purchased these Class Vehicles were exposed to and would be affected by its misrepresentations and omissions and would reasonably believe that the Class Vehicles would not contain a hidden Defect, and that Defendants' marketing materials, including representations and omissions, were otherwise accurate. However, Defendants' representations are false and misleading because Defendants did not disclose the Defect. This conduct is also unfair under the GBL.

157. Defendants intended that Plaintiff Diaz and each of the other New York Subclass members would reasonably rely upon the representations, misleading characterizations, and material omissions concerning the Class Vehicles.

158. Defendants' representations, concealment, omissions, and other deceptive and unfair conduct were likely to deceive and cause misunderstanding and/or cause Plaintiff Diaz and the other New York Subclass members to be deceived about the true nature of the Class Vehicles and accompanying Defect.

159. Defendants engaged in its unlawful conduct as alleged herein willfully, wantonly, and with reckless disregard for the truth.

160. Plaintiff Diaz and other Subclass members have been injured inasmuch as they, having viewed the marketing and advertising, including Defendants' material omissions, did not receive the benefit of their bargain.

161. Defendants' conduct as alleged herein constitutes a deceptive act and practice in business conduct violating NYGBL §349(a), and Plaintiffs and other Sub-class members have been damaged thereby.

162. As a result of Defendants' deceptive acts and practices, Plaintiffs and other Subclass members are entitled to monetary and compensatory damages, interest, and attorneys' fees and costs. This includes actual damages under NYGBL §349 and statutory damages of $50 pursuant to NYGBL §349, as well as maximum statutory damages to be awarded in the discretion of the court and reasonable attorneys' fees.

## COUNT VII
### Violation of the New York General Business Law §350, *ET SEQ.*
### (On behalf of the Plaintiff Diaz and the Multi-State Subclass and, alternatively, the New York Subclass)

163. Plaintiff Diaz, on behalf of himself and the New York Sub-class and all others similarly situated, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

164. NYGBL §350 makes "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service" in New York unlawful. NYGBL §350 provides that "[i]n determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, device, sound, or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity ... to which the advertising relates under the conditions prescription in said advertisement, but also any such conditions as are customary and usual."

165. Throughout the relevant period, by advertising, marketing and/or selling the Class Vehicles with claims that they were safe, reliable, and would perform as intended, Defendant engaged in false advertising concerning the Class Vehicle.

166. Defendant's marketing and advertising of the Class Vehicle were likely to mislead reasonable consumers acting reasonably under the circumstances.

167. Plaintiff Diaz was injured in fact as a result of Defendants' conduct. Plaintiff Diaz and other members of the Subclass did not receive the benefit of their bargain.

168. Defendants engaged in unlawful conduct as alleged herein willfully, wantonly, and with reckless disregard for the truth.

169. Defendants' material misrepresentations and omissions were uniform.

170. As a result of Defendants' acts and practices in violation of GBL §350, Plaintiff Diaz and Subclass members are entitled to monetary and compensatory damages, restitution, and disgorgement of all monies obtained using Defendants' unlawful conduct, interest, and attorneys' fees and costs, as well as statutory damages of $500, as well as the maximum statutory damages to be awarded in the discretion of the court and reasonable attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class, requests that the Court enter judgment in their favor and against Defendants, awarding as follows:

A. Declaring that this action is properly maintained as a class action, certifying the proposed Class(es), appointing Plaintiffs as Class Representatives, and appointing Plaintiffs' counsel as Class Counsel;

B. Directing that Defendants bear the costs of any notice sent to the Class(es);

C. Declaring that Defendants must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits they received from the sale of the Noticed Products or order Defendants to make full restitution to Plaintiffs and the members of the Class(es);

D. Awarding restitution and other appropriate equitable relief;

E. Granting an injunction against Defendants to enjoin it from conducting its business through the unlawful, unfair, and fraudulent acts or practices set forth herein;

F. Granting an Order requiring Defendants to fully and adequately disclose the safety risks associated with the Noticed Products to anyone who may still be at risk of buying and using the Noticed Products;

G. Ordering a jury trial and damages according to proof;

H. Enjoining Defendants from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

I. Awarding actual, statutory, treble, and punitive damages pursuant to applicable law;

J. Awarding attorneys' fees and litigation costs to Plaintiffs and members of the Class(es);

K. Awarding prejudgment interest, and punitive damages as permitted by law; and

L. Ordering such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs, individually and on behalf of all those similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable. demand a trial by jury of all claims in this Complaint so triable.

## **NOTICE OF RELATED ACTIONS**

Please take notice that the above-captioned case is related to the *Lili Natale et als. v. Toyota Motor Corporation et al.*, Case No. 2:25-cv-6150, United States District Court, Eastern District of New York, filed on November 4, 2025. These cases are related because both cases name Toyota Motor North America, Inc., Toyota Motor Sales U.S.A., as defendants, both seek to certify a nationwide class, a New York subclass, and a New Jersey subclass, and both actions allege the common law causes of action for common law fraud and unjust enrichment.

Furthermore, both actions challenge the same conduct, as the claims arise from Defendants' manufacturing, marketing, and sale of defective transmissions. Given this, both matters will rely on the same or similar evidence, and discovery will be largely duplicative. Finally, given that the nationwide class claims are the same, both matters will require analysis under the same legal authorities.

Date: February 12, 2026

Respectfully submitted,

/s *Bruce H. Nagel*

Bruce H. Nagel, Esq.
Lisa R. Considine, Esq.
David J. DiSabato, Esq.
103 Eisenhower Parkway
Roseland, New Jersey 07068
973-618-0400
bnagel@nagelrice.com
lconsidine@nagelrice.com
ddisabato@nagelrice.com

Joseph Santoli, Esq.
340 Devon court
Ridgewood, New Jersey 07450
201-926-9200
josephsantoli002@gmail.com

*Attorneys for Plaintiffs an the putative Class Members*